JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

JAMES C. MANN (CABN 221603)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
   Oakland, California 94612
   Telephone: (510) 637-3705
   Facsimile: (510) 637-3724
   E-Mail: James.C.Mann@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-07-00617 CW |
|   Plaintiff, ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. ) | **Sentencing Date: July 9, 2008, 2:00 p.m., The Honorable Claudia Wilken** |
| ANTHONY CRAWFORD, ) | |
|   Defendant. ) | |

    The United States of America requests that defendant Anthony Crawford be sentenced to 84 months imprisonment, the low end of the United States Sentencing Guidelines ("Guidelines") range, and three years of supervised release, consistent with the Plea Agreement.

### INTRODUCTION

    After being stopped on a public highway with 21 baggies of cocaine and 16 baggies of marijuana in his pocket, and a stolen, loaded .357 magnum revolver in his trunk, defendant pleaded guilty to one violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute cocaine) and one violation of 18 U.S.C. § 922(g) (felon in possession of a firearm). With one exception, the parties agree with the Guidelines calculations set forth in the Presentence Investigation Report ("PSR") — defendant objects to the application of the four-

1  level upward adjustment for possessing the firearm in connection with another felony. The plain
2  language of the Guidelines and the case law dictate, however, that when a firearm is recovered in
3  close proximity to drugs, as was the case here, the four-level upward adjustment for possessing
4  the firearm in connection with drug trafficking is warranted.

5      Additionally, defendant's argument that he possessed the firearm solely for self defense
6  and not in connection with his drug trafficking should be rejected. Defendant has two prior
7  firearms-related convictions and four prior arrests involving firearms, all but one of which comes
8  before defendant was shot in 2006. Defendant's possession of firearms, therefore, did not
9  uniquely result from his being shot in 2006. Moreover, that defendant intended to use the
10 firearm only to protect himself from a random attack, but not to protect himself, his money, or
11 his drugs from a robbery attempt related to his drug trafficking is not credible.

12 **FACTUAL BACKGROUND**

13     The PSR adequately sets forth the criminal activity. Consequently, the United States will
14 not repeat the information in this section.

15 **ARGUMENT**

16 **I.    PURSUANT TO THE SENTENCING GUIDELINES, DEFENDANT SHOULD BE
          SENTENCED TO 84 MONTHS IMPRISONMENT AND THREE YEARS OF
17        SUPERVISED RELEASE.**

18     The United States agrees with the Guidelines calculations set forth in the PSR resulting in
19 a total offense level of 23 and a criminal history category of V. PSR ¶¶ 35, 50-52. Pursuant to
20 the Plea Agreement, the United States recommends a sentence of 84 months imprisonment,
21 which is the low end of the Guidelines range.

22     Defendant objects to the application of the four-level upward adjustment pursuant to
23 U.S.S.G. § 2K2.1(b)(6) for use or possession of a firearm in connection with another felony
24 offense. Addendum To Presentence Report ¶¶ 2-3. Defendant claims to have possessed the
25 firearm for self defense and not in connection with his drug trafficking. Id. To apply the upward
26 adjustment, the government must prove by a preponderance of evidence that defendant used or
27 possessed the handgun in connection with his drug trafficking offense. United States v. Polanco,
28

1  93 F.3d 555, 566-67 (9th Cir. 1996) (citing United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.
2  1991)).

### A. The Plain Language Of The Guidelines Dictates That The Four-Level Upward Adjustment Should Be Applied.

According to the relevant commentary to U.S.S.G. § 2K2.1(b)(6), this upward adjustment applies if "the firearm . . . facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, n. 14(A). Additionally, on November 1, 2006, the Guidelines were amended to clarify that when the other "felony offense" is a drug offense, and the "firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . ," the application of the upward adjustment "is warranted because the presence of the firearm has the potential of facilitating another felony offense." U.S.S.G. § 2K2.1, n. 14(B). It is well-settled that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Valenzuela, 495 F.3d 1127, 1133 (9th Cir. 2007) (quoting Stinson v. United States, 508 U.S. 36, 37 (1993)).

Here, the firearm was found "in close proximity to [the] drugs," thus warranting the application of the upward adjustment. The loaded handgun was recovered from the trunk of the car defendant was driving while in possession of 21 baggies of cocaine and 16 baggies of marijuana he admits were for sale.

### B. Case Law Dictates That The Four-Level Upward Adjustment Should Be Applied.

Even prior to the Sentencing Commission's express clarification of the Guidelines in 2006, however, the Ninth Circuit recognized that the presence of a gun in a drug trafficker's car "potentially embolden[s] him to undertake his illicit drug sales, since it afford[s] him a ready means of compelling payment or of defending the cash and drugs stored in the car." Polanco, 93 F.3d at 566-67. In Polanco, officers found a loaded gun between the driver's seat and console of the defendant's car and baggies of marijuana in the trunk of the defendant's car – effectively the reverse from the instant case. Id. at 559. In Polanco, the defendant was not arrested while

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR-07-00617 CW                -3-

1  driving his car, but he was seen on two separate occasions selling drugs on a corner not far from
2  his parked car (during which time the defendant walked between the corner and his parked car on
3  occasion).  Id. at 566-67.  Notably, the Court found that although the defendant was not always
4  within arm's reach of his gun, he was selling marijuana in the vicinity of his car and thus could
5  have availed himself of his gun at any time.  Id.  The Court, therefore, found appropriate the
6  application of the four-level upward adjustment for possessing the firearm in connection with
7  another felony offense (i.e., drug-trafficking).  Id.
8       In the instant case, the loaded firearm was found in the trunk of defendant's car while he
9  was driving it, and the drugs defendant intended to sell were recovered from his pocket.
10 Although the gun was not in defendant's arm's reach while he was driving, he could certainly
11 have availed himself of the gun at anytime to compel payment or defend his cash or drugs.
12      Furthermore, defendant's claim that he possessed the handgun for self defense, but not in
13 connection with his drug trafficking, is not plausible.  Defendant claims that he possessed the
14 firearm for self defense following a 2006 incident in which he was shot in his home.  As noted in
15 the PSR, in the 2006 incident, defendant answered his door at 2:00 a.m. and a woman asked:
16 "Anthony, is Boo up there?"  PSR ¶¶ 70-71.  A black male then shot defendant, asked where the
17 money was, and then entered defendant's house and took $100.00 off of a table.  Id.  Although it
18 is possible that this robbery resulted from defendant's drug-trafficking activities, it is not
19 necessary to make this determination for this inquiry.  That defendant would use the gun to
20 protect himself from a random attack, but not to protect himself from being robbed for his drugs
21 or drug-proceeds is implausible.  Indeed, the Ninth Circuit has previously found such an
22 explanation to be implausible.  United States v. Ferryman, 444 F.3d 1183, 1186 (9th Cir. 2006).
23 Although interpreting U.S.S.G. §§ 2D1.1 and 5C1.2, not the upward adjustment in U.S.S.G. §
24 2K2.1(b)(6), the Court's logic is instructive here.  Id.  In Ferryman, the defendant claimed that he
25 kept multiple firearms at his home, which also housed a marijuana growing operation, after his
26 son was badly beaten in a 2001 gang-related home invasion.  Id.  The district court, however,
27 rejected the defendant's explanation that, "although the marijuana operation probably enticed
28 intruders into the home and endangered his family, he would have been able to determine when

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR-07-00617 CW                    -4-

he should use firearms in defense of his family, in a way separate from defense of the marijuana growing operation." Id.  Defendant's similar explanation in the instant case should be rejected as well.

## II. APPLICATION OF THE FACTORS IN 18 U.S.C. § 3553(a) DEMONSTRATES THAT A SENTENCE OF 84 MONTHS IMPRISONMENT AND THREE YEARS OF SUPERVISED RELEASE IS REASONABLE.

The Supreme Court recently stated that, the "Guidelines . . . seek to embody the § 3553(a) considerations, both in principle and in practice." Rita v. United States, 127 S. Ct. 2456, 2464 (2007).  These factors or considerations include:  the need for the sentence to promote respect for the law, afford adequate deterrence, protect the public from further criminal conduct by the defendant, and provide the defendant with needed training and medical care.  18 U.S.C. § 3553(a).

### A. A Sentence Of 84 Months Imprisonment Is Necessary To Protect The Public, Afford Adequate Deterrence, And To Promote Respect For The Law.

Defendant has been in custody or on some form of monitored release for the majority of his adult life.  PSR ¶¶ 37-49.  He has been convicted of at least thirteen separate crimes (five felonies), including the continued sexual abuse of his 11 year-old daughter in 1995 for which he was sentenced to six years in prison.  Id.  Defendant's state parole has been revoked at least four times and his state probation has been modified at least three times.  Id.  Moreover, this is defendant's third conviction for illegal possession of firearms and his third conviction for drug trafficking-related offenses.  Id.

In addition to defendant's criminal convictions, which put him into criminal history category V in this case, defendant was arrested in 1992 for raping a woman at gunpoint, although charges were never filed.  PSR ¶ 56.

Given defendant's lengthy criminal history and inability to comply with the terms of his supervision, a sentence of 84 months is reasonable and necessary to protect the public, afford adequate deterrence, and to promote respect for the law.

////

////

**B. A Sentence Of 84 Months Imprisonment May Provide Defendant With Necessary Training And Medical Care.**

Defendant admits to a long history of substance abuse dating back approximately 24 years. PSR ¶ 75. Defendant reports that he used cocaine "socially," but that since being shot in 2006, he used it daily. Id. Additionally, defendant reports that, since the shooting he has regularly used Vicodin. Id. It is apparent both from defendant's prior drug-related convictions and his own admissions regarding his drug abuse, that defendant could benefit from an intense drug treatment program. Moreover, defendant reports that he is already availing himself of educational and training opportunities, such as obtaining his GED, while in custody. Id. at ¶ 76.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court determine that defendant's Guidelines offense level is 23 and his criminal history category is V. The United States further respectfully requests that, taking into consideration the sentencing factors set forth in section 3553(a), the Court sentence defendant to the low-end of the applicable Guidelines range, namely, 84 months imprisonment, impose a three-year term of supervised release (under the terms and conditions recommended by the USPO), and order defendant to pay a $200 special assessment.

DATED: July 2, 2008                                                  Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

    /s/
JAMES C. MANN
Assistant United States Attorney