BARRY J. PORTMAN
Federal Public Defender
JEROME E. MATTHEWS
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant ANTHONY CRAWFORD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-07 00617 SBA |
| ) | |
| Plaintiff, ) | **ANTHONY CRAWFORD'S** |
| ) | **SENTENCING MEMORANDUM** |
| vs. ) | |
| ) | **Date: July 9, 2008** |
| ANTHONY CRAWFORD, ) | **Time: 2:00 p.m.** |
| ) | |
| Defendant. ) | |
| _____) | |

**1. Preliminary Statement**

At 3:00 a.m. on March 30, 2006, a man wearing black clothing and a ski mask orchestrated a home invasion robbery and shot Anthony Crawford four times at point blank range. Mr. Crawford received extensive physical and psychological therapy following the incident, and, for a time, was too afraid to venture outside. He still suffers pain, impaired mobility and flashbacks. Two bullets remain lodged in his chest.

On November 28, 2007, Mr. Crawford appeared on a two-count indictment charging him with being a felon in possession of a firearm and possessing cocaine with intent to distribute it. He later pleaded guilty to both counts of the indictment without challenging the government's

SENTENCING MEMORANDUM            1

case by motion or otherwise. The single issue before the Court under the plea agreement is whether Mr. Crawford should spend additional time in prison for possessing the firearm in connection with the drug offense. The probation officer, however, also suggests that the Court should consider departing upward because his criminal history category is not high enough. The record justifies neither result. Mr. Crawford therefore requests that the Court sentence him to fifty-seven months.

## 2. Background

This case arose from a routine traffic stop. Oakland Police officers pulled over Mr. Crawford after reportedly seeing him driving above the speed limit. They searched Mr. Crawford under the authority of a county probation search provision, and recovered cocaine from his person and a revolver from the trunk of the car. No drugs or other contraband were found either in the passenger compartment or trunk of the car.

## 3. Sentencing Recommendation

### I.

### **The Components of A Reasonable Sentence**

*United States v. Booker*, 543 U.S. 220 (2005), directs the sentencing court to impose an appropriate sentence, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. Under the post-*Booker* discretionary sentencing regime, there is no longer any question that the advisory Guideline range is only one factor among several that this Court is required to consider in determining what constitutes a reasonable sentence. The Court is free to disagree with Guideline ranges and policy considerations. *See Kimbrough v. United States*, 128 S.Ct. 558, 57 (2007). While circuit courts of appeal may apply a presumption of reasonableness to sentences within the applicable Guidelines range, *Rita v. United States*, 127 S.Ct. 2456 (2007), the district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id.* at 2465. Nor is it required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *Gall v. United States*, 128

SENTENCING MEMORANDUM                 2

S.Ct. 586, 596 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 127 S.Ct. at 2469.

Sentencing discretion, therefore, is not a hollow term of art. The courts of appeal are limited to reviewing sentences for abuse of discretion and may not presume that a sentence which may be much lower than that suggested by the Guidelines is unreasonable. *Gall*, 128 S.Ct. at 597.

18 U.S.C. § 3553(a), the wellspring from which a reasonable sentence must be drawn, "contains an overarching provision," *see Kimbrough*, 128 S.Ct. at 570, directing the district court to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. Section § 3553(a) (emphasis added). Those purposes include the need:

- to provide just punishment;
- to create adequate deterrence;
- to protect the public; and
- to provide the defendant with necessary treatment and training.

Section 3553(a)(2).

In sum, "th[e] mandatory system [embodied in § 3553(b)] is no longer an open choice." *Booker*, 543 U.S. at 263. Instead, the district court's duty is to impose the least amount of time necessary to achieve § 3553(a)'s purposes. The Guidelines range is subordinate to that duty.

Mr. Crawford maintains that a sentence of fifty-seven months is appropriate, both because the record does not justify a four-level enhancement under 2K2.1(b)(6), and because fifty-seven months is a sentence sufficient but not greater than that necessary to meet the directives of 18 U.S.C. §3553(a).

SENTENCING MEMORANDUM                    3

## II.

## **A Sentence of Fifty-Seven Months is Appropriate in This Case**

### A. The Record Does Not Support A Four-Level Enhancement

USSG §2K2.1(b)(6) imposes a four-level increase for possessing a firearm in connection with another felony offense, here possession with intent to distribute cocaine. The presence of a firearm at the time of arrest, however, is insufficient. The government must show more than "a defendant's mere possession of a firearm" to support the enhancement. *United States v. Routon*, 25 F.3d 815, 818-19 (9th Cir. 1994). Rather, it must show that the weapon was possessed "in a manner that permits an inference that it facilitated or potentially facilitated --i.e., had some potential emboldening role -- in a defendant's felonious conduct." *United States v. Ellis*, 241 F.3d 1096, 1099 (9th Cir. 2001). In the context of drug offenses, courts have required a tangible nexus between the firearm and drugs or drug activity to support the enhancement. *See, e.g.*, *United States v. Rohwedder*, 243 F.3d 423 (8th Cir. 2001) (guns found in locked cabinet with drugs); *United States v. Peterson*, 233 F.3d 101 (1st Cir. 2000) (guns were stored near marijuana at two separate locations). These cases are unremarkable in that the gun clearly was located in immediate or very close proximity to a significant amount of drugs, and would likely have been decided the same way in the Ninth Circuit as the gun clearly would have had some "potential emboldening role" in drug trafficking.

The picture is not as clear when the firearm is found in a car, and cases suggest that the connection between the firearm and drug activity must be strong. For example, in *United States v. Carter*, 355 F.3d 920 (6th Cir. 2004), after police stopped a car after witnessing a suspected drug transaction in an area known for narcotics activity, defendant was observed to have a gun in his hand while trying to conceal it under the driver's seat. Several bags of marijuana were recovered from the vicinity of the front passenger area. The court held that the enhancement was properly imposed. 355 F.3d at 925-26.

So too in this circuit. In *United States v. Polanco*, 93 F.3d 555 (9th Cir. 1996), defendant

SENTENCING MEMORANDUM            4

1  was driving a car in which he kept a loaded gun wedged between the driver's seat and the
2  console.  He was seen conducting two drug sales at an intersection which was close to his car,
3  during which he was seen occasionally returning to his car.  A large amount of cash was found
4  in the car which suggested that the defendant was depositing his drug proceeds into his car.  The
5  court found that "[a]lthough Polanco was not always within arm's reach of his gun . . .
6  nevertheless he was selling marijuana in the vicinity of his car and thus could have availed
7  himself of his gun at any time.  The presence of the gun in Polanco's car potentially emboldened
8  him to undertake his illicit drug sales, since it afforded him a ready means of compelling
9  payment or of defending the cash and drugs stored in his car." *Id.* at 567; *see also United States
10 v. Gonzales*, 506 F.3d 940, 946-47 (9th Cir. 2007) (during search incident to arrest following
11 traffic stop police found gym bag on passenger-side floor containing methamphetamine and a
12 loaded gun).
13        Not so, however, in this case.  First, Mr. Crawford had a compelling reason for
14 possessing the firearm wholly independent of drug possession: he had been shot four times at
15 point blank range by an unknown assailant and rendered fearful and somewhat impaired as a
16 result.  Second, the gun was located in the car's trunk, an area nowhere near any drugs – all of
17 which were concealed on Mr. Crawford's person – and inaccessible to Mr. Crawford while he
18 was driving.  Third, no evidence suggests that the firearm emboldened Mr. Crawford in the
19 commission of the charged offense, namely possessing cocaine with the intent to distribute it:
20 although the packaging is consistent with intended distribution, there is no indicia – such as cash,
21 scales, or paraphernalia – demonstrating that Mr. Crawford had either recently conducted or was
22 in the process of conducting drug sales.  The present record is a far cry from the facts presented
23 in the cases previously cited, and is more consistent with coincidental possession of a firearm.
24 This circuit's precedent makes clear that coincidental possession is not a basis upon which the
25 Court may impose the 2K2.1(b)(6) enhancement.  *See Ellis*, 241 F.3d at 1099 (presence of rifle
26 on closet shelf where defendant concealed himself in escape case was "just the sort of 'accident

SENTENCING MEMORANDUM                        5

or coincidence' that the phrase 'in connection with' was specifically meant to exclude from coverage under the statute.").[1]

Given that no evidence supports the conclusion that Mr. Crawford possessed the firearm "in connection with" – as that term is explained by controlling precedent – his possession of cocaine with intent to distribute it, this Court may not apply a four-level enhancement. Mr. Crawford's total offense level should be 19 and the Court should impose a sentence of fifty-seven months.

### B. The Record Does Not Support An Upward Departure

The probation officer notes, without explicitly recommending, that Mr. Crawford's criminal history classification may under-represent the seriousness of his criminal history. PSR ¶ 108. True, some of his history is excluded because it is not scoreable, but the Sentencing Commission established a cut-off for purposes of determining under what circumstances criminal history should increase the potential sentence for a current offense. Moreover, the test is whether the "criminal history category *substantially* under-represents the seriousness of the defendant's criminal history." USSC §4A1.3(a)(1) (emphasis added). Here, three of Mr. Crawford's prior convictions are for driving without a license; five of his other convictions are misdemeanors. His sole conviction of sexual abuse does not rise to the level of a pattern. Equally important, the probation officer misstates the record: Mr. Crawford's assault convictions were misdemeanors and neither conviction was for a sexual assault (PSR Addendum, ¶ 5). Finally, his criminal history score is 11, placing him at the mid-range, not the upper end, of Category V.

Most telling, however, is the absence of any discussion that Mr. Crawford had attempted to turn his life around since his parole in 2002. According to the PSR, Mr. Crawford was paroled in October, 2002. (PSR, ¶ 46.) Following his release, he consistently tried to find a job but

---

[1] The probation officer's observation that Mr. Crawford "regularly used firearms in connection with his crimes" (PSR Addendum, ¶ 3) is unsupported by the record. Neither of Mr. Crawford's two firearms convictions were in connection with any other offense. (PSR, ¶¶ 42, 44.)

SENTENCING MEMORANDUM               6

rarely got even to the point of an interview because of his record. During the five year period between his release and his arrest for the current offense, he sustained three convictions: having an open alcoholic beverage in a car, driving without a license, and failure to register as a sex offender. While Mr. Crawford does not suggest that these convictions are meaningless, the first two are regulatory and the third, while more serious, is an offense against neither property nor person. In short, they are a far cry from his previous convictions and are emblematic of his efforts to turn away from committing crimes.

Mr. Crawford has continued his attempts to rehabilitate himself since his arrest. As soon as space became available, he enrolled in the DEUCE program offered by the county jail facility and also is working towards his GED certificate.[2] Additionally, members of the community note that he has made a number of positive contributions to his family and to others.[3]

### C. Fifty-Seven Months is Just Punishment

This Court will meet its duty under §3553(a) by imposing a sentence of fifty-seven months. As to the firearm count, this case presents a stark example of duress: the defendant "committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." Coercion or duress may take a number of forms. It does not require physical harm or even the threat of physical harm. *See United States v. Garza-Juarez*, 992 F.2d 896, 910-11 (9th Cir. 1993) (government's psychological coercion which fell short of entrapment proper basis for departure). It may consist of injury to property instead of the person. *United States v. Cheape*, 889 F.2d 477, 480 (3rd Cir. 1989). The threat need not be imminent and the sentencing court is directed to focus "upon the defendant's subjective evaluation of the circumstances in which the defendant was placed. *United States v. Johnson*, 956 F.2d 894, 898

---

[2] Confirmation of his enrollment is attached as Exhibit A.

[3] Copies of letters from Ms. Arterlia Goodwin and Mr. Perry Vital are attached as Exhibit B.

SENTENCING MEMORANDUM                    7

1   (9th Cir. 1992).[4]

2   *United States v. Amor*, 24 F.3d 432 (2nd Cir. 1994) is instructive.  There, the defendant
3   was charged with acquiring a shotgun, sawing off a portion of the barrel to an illegally short
4   length, and retaliation against a government informant.  Defendant claimed that he acquired the
5   shotgun and shortened its barrel because his car had been shot up and a threatening note had been
6   left on it, apparently in connection with an impending union strike.  The Court of Appeals
7   affirmed the district court's downward departure on grounds of imperfect duress, noting

> The evidence was sufficient to support the finding that [the defendant] had received a clear threat of physical injury and substantial property damage from the unlawful actions of unidentified parties.  While not enough to excuse [the defendant's] conduct, the nexus between that clear threat and [the defendant's] ensuing acquisition of a gun is sufficient to support the district court's conclusion that duress played an important part in setting in motion the events that led to [the defendant's] conviction.

12  *Amor*, 24 F.3d at 439.

13  Mr. Crawford was shot four times at point blank range.  He was not threatened,
14  forewarned or otherwise apprised that someone intended to kill him.  He sought and obtained
15  treatment for post-traumatic stress disorder, and still suffers residual symptoms from this
16  incident.  Mr. Crawford therefore stands on firmer ground than those defendants whose claims of
17  duress were upheld on mere evidence of a remote threat of physical harm.  He respectfully
18  suggests that his circumstances fully warrant a sentence at the low end of the Guidelines range
19  for offense level 19, namely fifty-seven months.

20  **D.  A Fifty-Seven Month Sentence Will Create Adequate Deterrence**

21  Mr. Crawford previously served two years in prison for being a felon in possession of a

---

[4] The lapse of time will not defeat a claim of justification or duress even when offered as a complete defense to the crime.  *E.g., United States v. Contento-Pachon*, 723 F.2d 691 (9th Cir. 1984) (defendant who could point to no evidence substantiating claim that he was being watched at all times by drug dealer who had threatened him and his family with death if defendant didn't smuggle cocaine into the U.S., who presented no evidence that dealer was holding his wife and child hostage, and who was arrested in a different country and at a remote time from the place and time at which the threat originated nonetheless made out a defense of duress).

SENTENCING MEMORANDUM                    8

firearm, and has never served time in prison for a drug offense. A sentence of fifty-seven months therefore is more than twice as long as any previous punishment for a firearm offense, and about five times as long as any previous punishment for a drug offense. Further, a fifty-seven month sentence, when considered in conjunction with the more intensive supervision employed by the U.S. Probation Office, creates a sufficiently strict set of conditions to deter Mr. Crawford from re-offending.

**E. A Fifty-Seven Month Sentence Will Sufficiently Protect the Public**

The requested sentence similarly will protect the public. Mr. Crawford is not eligible for probation and will not be released back into the community for a substantial period of time. During that time, he will have access to programs and counseling, and be better equipped to address and deal with the issues that have caused problems in his life.

**F. A Fifty-Seventh Month Sentence Will Permit Necessary Treatment and Training**

Mr. Crawford's substance abuse problems are acute. He began to abuse alcohol and marijuana at the age of eighteen, cocaine at age twenty-three, then crack. Most recently he has abused painkillers such as Vicodin. His participation in RDAP, the Residential Drug Abuse Treatment Program offered by the Bureau of Prisons, will permit him to overcome a persistent pattern of substance abuse.

**4. Conclusion**

For the reasons stated, Anthony Crawford respectfully requests that the Court impose a sentence of fifty-seven months.

Dated: July 2, 2008

                                              Respectfully submitted,

                                              BARRY J. PORTMAN
                                              Federal Public Defender

                                              /s/

                                              JEROME E. MATTHEWS
                                              Assistant Federal Public Defender